UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KEITH ALLEN, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, )<br>)<br>Defendant. )<br>) | Civil Case No. 00-591 (RCL) |

## MEMORANDUM OPINION

The plaintiffs in eleven cases[1] filed motions seeking enforcement of court orders that awarded them attorneys' fees pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(3)(B)(I). Because their cases concern the same material facts and issues of law, the Court consolidated them for consideration of these motions. ECF No. 44.

### I. BACKGROUND

The Individuals with Disabilities Education Act ("IDEA") authorizes Courts to award reasonable attorneys' fees as part of the costs "to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(I). However, Congress viewed an explosion in IDEA litigation as "usurping . . . resources from education to pay attorney fees." H.R. Rep. No. 105-670, at 50 (1998). Consequently, Congress capped the fees payable by the District in a rider to the Appropriations Act for fiscal year ("FY") 1999:

---

[1] The cases consolidated with this one include: *Bradley v. District of Columbia*, Civ. No. 99-3188; *Wingfield v. District of Columbia*, Civ. No. 00-121; *Isaac v. District of Columbia*, Civ. No. 00-122; *Gaskins v. District of Columbia*, Civ. No. 00-592; *Jones v. District of Columbia*, Civ. No. 00-593; *McDowell v. District of Columbia*, Civ. No. 00-594; *Abraham v. District of Columbia*, Civ. No. 01-0027; *Thomas v. District of Columbia*, Civ. No. 03-1791; *Adams v. District of Columbia*, Civ. No. 03-2139; *Clark v. District of Columbia*, Civ. No. 06-0439.

> None of the funds contained in this Act may be made available to pay the fees of an attorney who represents a party who prevails in an action, including an administrative proceeding, brought against the District of Columbia Public Schools under the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.) if—
>
> (1) the hourly rate of compensation of the attorney exceeds the hourly rate of compensation under section 11–2604(a), District of Columbia Code [$50]; or
>
> (2) the maximum amount of compensation of the attorney exceeds the maximum amount of compensation under section 11–2604(b)(1), District of Columbia Code [$1,300], except that compensation and reimbursement in excess of such maximum may be approved for extended or complex representation in accordance with section 11–2604(c), District of Columbia Code.

Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277 § 130, 112 Stat. 2681 (1998) ("1999 Act").

The D.C. Circuit subsequently upheld the constitutionality of the 1999 Act's fee caps. It held that while the rider limited the District's ability to pay attorneys' fees, it did not restrict the courts' authority to award reasonable fees against the District. *See Calloway v. District of Columbia*, 216 F.3d 1 (D.C. Cir. 2000). The incongruity of prohibiting the appropriation of funds explicitly provided for in IDEA is a matter for Congress—not the courts—to resolve. *Id.* at 10.

A similar rider was included in the FY 2000 appropriations bill:

> None of the funds contained in this Act may be made available to pay the fees of an attorney who represents a party who prevails in an action, including an administrative proceeding, brought against the District of Columbia Public Schools under the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.) if—
>
> (1) the hourly rate of compensation of the attorney exceeds 120 percent of the hourly rate of compensation under section 11–2604(a), District of Columbia Code [120% of this rate was $60]; or
>
> (2) the maximum amount of compensation of the attorney exceeds 120 percent of the maximum amount of compensation under section 11–2604(b)(1), District of Columbia Code [120% of this rate was $1,560], except that compensation and reimbursement in excess of such maximum may be approved for extended or complex representation in accordance with section 11–2604(c), District of Columbia Code.

District of Columbia Appropriations Act of 2000, Pub. L. No. 106-113, 113 Stat. 1501, 1517 (Nov. 29, 1999).

> The 2001 appropriations bill was similar, except it set an independent cap of $2,500.
>
> None of the funds contained in this Act may be made available to pay the fees of an attorney who represents a party who prevails in an action or any attorney who defends any action, including an administrative proceeding, brought against the District of Columbia Public Schools under the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.) if—
>
> (1) the hourly rate of compensation of the attorney exceeds 250 percent of the hourly rate of compensation under section 11–2604(a), District of Columbia Code; or
>
> (2) the maximum amount of compensation of the attorney exceeds 250 percent of the maximum amount of compensation under section 11–2604(b)(1), District of Columbia Code, except that compensation and reimbursement in excess of such maximum may be approved for extended or complex representation in accordance with section 11–2604(c), District of Columbia Code; and
>
> (3) in no case may the compensation limits in paragraphs (1) and (2) exceed $2,500.

District of Columbia Appropriations Act of 2001, Pub. L. No. 106-522, 114 Stat. 2440, 2464 (2000).

> For FY 2002, Congress changed the fee cap provision to read:
>
> Notwithstanding 20 U.S.C. 1415, 42 U.S.C. 1998, 29 U.S.C. 794a, or any other law, none of the funds appropriated under this Act, or in appropriations Acts for subsequent fiscal years, may be made available to pay attorneys' fees accrued prior to the effective date of this Act that exceeds a cap imposed on attorneys' fees by prior appropriations Acts that were in effect during the fiscal year when the work was performed, or when payment was requested for work previously performed, in an action or proceeding brought against the District of Columbia Public Schools under the IDEA.

District of Columbia Appropriations Act of 2002, Pub. L. No. 107-96, § 140(a), 115 Stat. 923 (2001) ("2002 Act").

Thus, Section 140 purports to make the 1999-2000 fee caps permanent. The D.C. Circuit considered whether such an amendment is permitted in an appropriations act, and "[held] that the unequivocal answer here is yes." *Whatley v. District of Columbia*, 447 F.3d 814, 821 (D.C. Cir. 2006). "[T]he normal presumption is that appropriations acts do not amend substantive law, and that when they do, the change is only intended for one fiscal year;" nonetheless, "when an appropriations act contains language that clearly indicates that it is intended to be permanent, its reach extends beyond the fiscal year for which it was originally enacted." *Id.* (internal quotations and citations omitted). The D.C. Circuit held that the statutory language of Section 140 unmistakably demonstrated Congress's intent to make the 1999-2001 fee caps permanent. However, the Court agreed with appellant-plaintiffs that future Congresses are free to repeal, modify, or otherwise invalidate a prior Congress's legislative act: "[W]hile § 140 bars payment in 'subsequent fiscal years,' Congress may, as it sees fit, change course and amend this directive." *Id.* at 820-21. The D.C. Circuit thus upheld the constitutionality of Section 140, as well. *Id.*

Courts have ruled that prior court judgments for attorneys' fees in excess of the fees are not "eviscerated" by the Section 140; rather, "awards of attorneys' fees above the cap accumulate as IOU's." *Wingfield v. District of Columbia*, Civ. No. 00-121 (D.D.C. July 7, 2002) (citing *Calloway*, 216 F.3d at 124 (Ginsburg, J., dissenting)); *cf. Whatley*, 447 F.3d at 820 (discussing "accumulated fees").

Then, in 2003, Congress set a flat cap of $4,000 on attorneys' fees for IDEA actions:

> None of the funds contained in this Act may be made available to pay—(1) the fees of an attorney who represents a party in an action or an attorney who defends an action, including an administrative proceeding, brought against the District of Columbia Public Schools under the IDEA in excess of $4,000 for that action.

Consolidated Appropriations Act of 2003, Pub. L. No. 108-7, § 144, 117 Stat. 11 (2003) ("2003 Act"). Congress passed nearly identical bills each year from 2004 to 2008, although the phrase

4

"including an administrative proceeding" was removed from 2006 through 2008. *See* Consolidated Appropriations Act of 2004, Pub. L. No. 108-199, § 432, 118 Stat. 3 (2004); District of Columbia Appropriations Act of 2005, Pub. L. No. 108-335, § 327, 118 Stat. 1322 (2004); Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia and Independent Agencies Appropriations Act of 2006, Pub. L. No. 109-115, § 122, 119 Stat. 2369 (2005), *cont'd in effect*, Revised Continuing Appropriations Resultion, § 101(a)(9), Pub. L. No. 110-5, § 101, 121 Stat. 8 (2007); District of Columbia Appropriations Act of 2008, Pub. L. No. 110-161, § 819, 121 Stat. 1844 (2007).

In 2009, Congress passed the final rider relating to IDEA attorneys' fees, providing in relevant part:

> Notwithstanding section 615(i)(3)(B) of the Individuals with Disabilities Education Act (20 U.S.C. § 1415(i)(3)(B)), none of the funds contained in this Act or in any other Act making appropriations for the government of the District of Columbia for fiscal year 2009 or any succeeding fiscal year may be made available—
>
> (1) To pay the fees of an attorney who represents a party in or defends in an IDEA proceeding which was initiated prior to the date of the enactment of this Act in an amount in excess of $4,000 for that proceeding.

Omnibus Appropriations Act, Pub. L. No. 111-8, § 814, 123 Stat. 524 (2009) ("2009 Act").

While the 2009 Act prohibited funds from going toward attorneys' fees in IDEA proceedings initiated prior to its enactment, it did not provide a fee cap for future cases. *See* 155 Cong. Rec. H153, 2074 (daily ed. Feb. 23, 2009) (statement of Rep. David Obey, Chairman of the H. Comm. on Appropriations) ("Section 814 lifts the cap on funds that can be used to pay the fees of an attorney in a suit brought against the District of Columbia under the Individuals with Disabilities Act."); Pls.' Mot. App. F, Letter from Former D.C. Attorney General Irvin B. Nathan, at 2 ("Since 2009, Congress has failed to include a similar fee cap restriction in any of its annual

appropriations acts, meaning the District has been paying uncapped attorney's fees, when appropriate, out of appropriated funds since that time.").

In each of the consolidated cases, the plaintiffs have won judgments for attorneys' fees pursuant to IDEA. Plaintiffs now assert that the District has failed to pay the fees as required by the judgments to the extent permitted by the relevant appropriations bills.

## II. ANALYSIS

Plaintiffs now ask the Court to enforce the outstanding judgments that awarded their counsel fees in IDEA cases. They make five arguments relating to their request: (1) the plain language of Section 814 of the 2009 Act permits payments in full to all prior IDEA litigation; (2) the District's interpretation of Section 814 violates the separation of powers doctrine and res judicata as it would mean Congress is interfering with the final judgments of Article III courts; (3) the District's interpretation of Section 814 would constitute an unlawful taking; (4) the District's interpretation of Section 814 violates the Equal Protection Clause; and (5) that plaintiffs are also owed interest on outstanding judgments. Pls.' Mot. to Enforce Judgment ("Pls.' Mot.") at 10.

The District argues that the appropriations bills prohibit it from paying any additional fees, that its actions are constitutional, and that furthermore, the judgments at issue are outside of the twelve-year statute of limitations period.

### A. Statute of Limitations

District of Columbia local and federal judgments are subject to a twelve-year statute of limitations. D.C. Code § 15-101. However, "[t]he time during which the judgment creditor is stayed from enforcing the judgment, by written agreement filed in the case, or other order, or by the operation of an appeal, may not be computed as a part of the period within which the judgment is enforceable by execution." D.C. Code § 15-101(a)(2).

6

Several of the judgments were effectively stayed by court order, and the time that has passed since those orders issued cannot be counted toward the twelve-year limit.

Several of the judgments at issue explicitly acknowledged from the beginning that the District's ability to pay was limited by the applicable fee caps. *See Adams*, Civ. No. 03-2139, ECF No. 35-1 ("payment of the fee is subject to applicable law, including, but not limited to Section 327 of the District of Columbia Appropriations Act . . . ."); *Abraham*, Civ. No. 01-0027; ECF No. 80 (same). In other actions, courts have previously denied plaintiffs' motions to compel payment because the fee caps prohibited further payment at that time, effectively staying the litigation. *See Allen*, Civ. No. 00-591, ECF No. 35 (granting in part and denying in part plaintiffs' motion to compel by ordering the District to pay only $2,500 and citing to *Wingfield*, Civ. No. 00-121 (D.D.C. July 8, 2002)); *Jones*, No. 00-593, ECF No. 44 (same); *McDowell*, Civ. No. 00-594, ECF No. 34 (same); *Bradley*, Civ. No. 99-3188, ECF No. 55 (same); *Isaac*, No. 00-0122 (same);[2] *Wingfield*, Civ. No. 00-121, ECF No. 41 (denying plaintiffs' motion to compel without prejudice because the fee cap limited the District's ability to pay at that time). Because the statute of limitations was tolled by these orders, plaintiffs are not barred from seeking enforcement of the judgments in these cases. Still other judgments were entered well within the 12-year period. *See Adams*, Civ. No. 03-2139, ECF No. 35-1; *Thomas*, Civ. No. 03-1791, ECF No. 37; *Clark*, Civ. No. 06-0439, ECF No. 37.

However, the judgment awarding fees in *Gaskins*, No. 00-592, was issued more than twelve years prior to plaintiffs' motions to compel were filed in this case. There was no order or other agreement staying the enforcement of the judgments or making any mention of the fee caps. While

---

[2] Plaintiffs' motion to compel payment for attorneys' fees and costs, docketed on March 18, 2002, was never ruled upon. This motion should have been granted in part, as the District conceded in its opposition that it owed plaintiffs $2,500 in this case. The Court thus granted the motion nunc pro tunc in an Order issued this date, which operates to toll the statute of limitations as of April, 23, 2002.

it is true that the plaintiffs were unable to obtain full payment on these judgments at the time of their issuance, this is not a circumstance that tolls the statute of limitations pursuant to the D.C. Code. Plaintiffs, hoping to collect their fees in the future if the caps were raised or eliminated, should have moved for an order of revival, which would have tolled the statute of limitations. Having failed to do so, plaintiffs are now barred from enforcing the judgments for attorneys' fees in this case.

### B. Amount District Must Pay

1. Balance of the Judgments

Plaintiffs request the entire balance of plaintiffs' judgments for attorneys' fees. *See* Pls.' Mot. at 2 (asking the Court to "Order Defendant to pay Plaintiff the balance on all outstanding judgments"). However, Congress has prohibited the District from so doing.

Section 814 of the 2009 Act provides that appropriated funds shall not be used—either in 2009 or in future fiscal years—"to pay the fees of an attorney who represents a party in or defends an IDEA proceeding which was *initiated* prior to the date of the enactment of this Act in an amount in excess of $4,000 for that proceeding." (emphasis added). Plaintiffs argue that based on the common meaning of the word "initiated," Section 814 "only refer[s] to cases that were ongoing or had pending judgments at the time of its enactment, not those with final judgments." Pls.' Mot. 13. The Court accepts all of plaintiffs' definitions of the term "initiated," to include "commenced; inchoate" or to "cause a process or action to begin." Still, the cases were "commenced," "inchoate," and had been "caused to begin" *prior to the date of enactment* of the 2009 Act. The plain language of the Act belies plaintiffs' interpretation of its terms. Nothing in the statute suggests that the 2009 Act only refers to ongoing cases: There is simply no basis for such a limitation.

Plaintiffs also assert that because the phrase "including an administrative proceeding" was removed from the language of the appropriations bills from 2006-2008, there was no cap in place on fees for administrative proceedings during that time. Pls.' Response to Def.s' Post-Hearing Brief at 3. However, those bills defined the term "action" to "include[] an administrative proceeding and any ensuing or related proceedings before a court of competent jurisdiction." *See* Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia and Independent Agencies Appropriations Act of 2006, Pub. L. No. 109-115, § 122, 119 Stat. 2396 (2005), *cont'd in effect*, Revised Continuing Appropriations Resolution, § 101(a)(9), Pub. L. No. 110-5, § 101, 121 Stat. 8 (2007); Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, § 819, 121 Stat. 1844 (2007).

Nor is there any reason to find that judgments for attorneys' fees are not subject to the caps because the acts do not specifically state that they apply to "judgments" or "interest." *See* Pls.' Mot. 14-15. The appropriations bills place a general limitation on the District's ability to pay "attorneys' fees." There is no reason to believe that this excludes attorneys' fees pursuant to court order. Furthermore, it has long been the law of this Circuit that although a Court may order fee awards in excess of the fee caps, the District has no obligation to pay them.

The 2009 Act prohibited the payment of fees in excess of $4,000 in proceedings initiated prior to its enactment and explicitly extended to succeeding fiscal years. This was the last time Congress mentioned such fees in an appropriations bill or otherwise. Therefore, the District is prohibited at this time from paying more than $4,000 per action in this case for cases initiated prior to March 11, 2009, which includes all of the consolidated cases.

2. Up to $4,000 cap

Although the 2009 Act prohibits plaintiffs from recovering the full balance of their fee awards at this time, they are entitled by statute to collect $4,000 per action in each case prior to 2009, less what has already been paid. The District now concedes this is true. *See* Def.'s Mem. Regarding the Effect of the 2009 Appropriations Act on Prior Atty's Fees Judgments, ECF No. 68, at 2 ("[T]he net effect of [the] 2009 Act is to permanently and retroactively cap at $4,000 attorney's fees for all proceedings initiated before March 11, 2009"). Nonetheless, in an abundance of caution, the Court will elaborate on this issue and address the arguments initially set forth by the District in their opposition brief.

The District previously asserted that because "'Section 140 [of the 2002 Act] mandates that the District is *never* to pay fees for work done or fees requested from 1999-2001' . . . the District's payment on Plaintiffs' judgments for fees subject to and above the 1999-2001 fee caps is permanently barred." Opp'n 7 (quoting *Whatley*, 447 F.3d at 819). This is a half-truth: Payment above the fee caps was permanently barred *unless* a future Congress chose to "change course and amend this directive." *Calloway*, 447 F.3d at 820. That is exactly what Congress did in 2003, when it passed a new appropriations bill that only prohibited payment of fees in excess of $4,000. *Cf. B.R. ex rel. Rempson v. D.C.*, 802 F. Supp. 2d 153, 165 (D.D.C. 2011) ("Although the D.C. Appropriation Act of 2009 removed the cap on future IDEA attorney's fees, the $4,000 limit still applies for *any action* commenced before 2009" (emphasis added)). The 2003 bill—as well as the nearly identical bills passed each year from 2004 through 2008—simply stated that funds were not to be used to pay "the fees of an attorney who represents a party in an action or an attorney who defends an action, including an administrative proceeding, brought against the District of Columbia Public Schools under the IDEA in excess of $4,000 for that action." 2003 Act. This is consistent with the 2009 Act, which permits payments of up to $4,000 for all cases initiated prior

to its enactment. Because the most current appropriations bill permits the District to pay up to $4,000 for such actions, the District must do so.

Although not well addressed in the briefs, there is apparently some dispute over what constitutes an "action" pursuant to IDEA and the relevant appropriations bills. For example, it became clear at oral argument and in subsequent submissions that the plaintiffs believe the fee cap applies separately to an administrative hearing and an ensuing proceeding before this Court. In other words, a plaintiff should recover $4,000 for a successful claim in the administrative hearing, and another $4,000 for his subsequent success before this Court. *See, e.g.*, Pls.' Response to Def.'s Post-Hearing Brief, Ex. 1. However, the D.C. Circuit has previously rejected this argument when considering the 2005 appropriations act, holding that the term "action" in the fee cap provisions "encompasses both administrative proceedings and subsequent fee requests brought in the court by prevailing parties." *Kaseman v. District of Columbia*, 444 F.3d 637 (D.C. Cir. 2006). Therefore, "[a]n award of fees for the underlying educational dispute and an award of fees-on-fees are thus both subject to a single application of the fee cap." *Id.* Indeed, the fee cap has since been revised to define an action to include "an administrative proceeding *and* any ensuing or related proceedings before a court of competent jurisdiction." Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia and Independent Agencies Appropriations Act of 2006, Pub. L. No. 109-115, § 122, 119 Stat. 2396 (2005) (emphasis added). It is now clear that the District is not required to pay up to the fee cap a second time where administrative actions are subsequently brought to federal court.

Finally, it was not until the plaintiffs submitted a report in response to an Order of this Court that it became clear that they believe the fee caps apply separately to a minor child plaintiff and his parent as next friend. *See, e.g.*, Pls.' Report to Court on Judgments Owed by Def., ECF

No. 63, at 6 (chart denoting amounts due to each student and parent separately). However, this was not previously raised and indeed contradicts plaintiffs own briefs up until that point. *See* Pls.' Reply to Defs.' Opp'n to Mot. to Enforce, ECF No. 42 at 1 n.1 (counting each parent/child pair as one plaintiff). Plaintiffs had previously referred to the District's debt to the "222 plaintiffs," a number that accounts for each parent/child pair only once. *See id.* at 8, 14. Although plaintiffs insisted in a hearing that the suits were brought by the parents as next friends of their children *and* in their individual capacities, plaintiffs raise this belatedly, in contradiction to their earlier filings, and provide no evidence that the parents in these suits filed—and succeeded on—claims on their own behalves. For these reasons the Court holds that the fee cap does not apply separately to the parent plaintiffs and child plaintiffs in these cases.

**C. Constitutional Challenges**

Plaintiffs also assert constitutional challenges against the District, arguing violations of the doctrines of separation of powers and res judicata, the Equal Protection Clause and the Takings Clause.

1. Separation of Powers

The plaintiffs argue that the District's interpretation of Section 814(a)(1) of the 2009 Act would violate the doctrines of separation of powers and res judicata by implying that Congress sought to negate final judgments of Article III Courts. Pls.' Mot. to Enforce at 24. "If, as Defendant suggests, the language retroactively affects all IDEA litigation, regardless of finality, then it effectively reopens final judgments with orders for attorneys' fees that have already been contested and resolved." *Id.* However, the 2009 Act is structurally identical to the 2002 Act, and the D.C. Circuit upheld the constitutionality of that act, explicitly finding that even indefinite fee caps do not violate separations of powers principles. *Whatley*, 447 F.3d at 821.

2. Equal Protection

The D.C. Circuit has explicitly rejected an Equal Protection challenge against the 1999 fee cap. *Calloway*, 216 F.3d at 8 (rejecting the suggestion that a fee cap should be reviewed under heightened scrutiny because it burdens the educational opportunities of a disadvantaged group, and upholding the fee cap under rational basis review). However, plaintiffs do not make an equal protection claim against the fee caps themselves. *See* Pls.' Mot. to Enforce at 33 ("Plaintiff does not ask the Court to interpret whether or not Congress acted irrationally in its passage of § 814, merely enforce it. The equal protection claim here is against Defendant, an executive body, which, despite permission from Congress, refuses to appropriate funds to pay Plaintiff's attorney's fees."). Instead of challenging the constitutionality of the legislation itself, the plaintiffs claim that the District acts unconstitutionally by refusing to pay judgments for attorneys' fees that the legislation expressly permits it to pay. But even to the extent that the District has unlawfully withheld attorneys' fees, the Court need not decide whether the act of withholding the fees is unconstitutional. At minimum, the District has unlawfully refused to pay attorneys' fees compelled by IDEA and ordered by the courts. The remedy for this unlawful conduct is the same, whether or not its actions were constitutional: The District must pay plaintiffs the amount unlawfully withheld.

3. Takings Clause

Finally, plaintiffs argue that the District's actions constitute a taking through its unreasonable interpretation of the 2009 Act. However, plaintiffs never had a vested property interest in any fees in excess of the caps in place when they were awarded. While the D.C. Circuit in *Calloway* suggested that counsel might seek fees in excess of the cap if the cap were lifted, it did not hold that the potential for additional recovery *must* exist. The court judgments at issue in

this case were *always* subject to the caps, and recovery of any excess was contingent upon future congressional action to appropriate additional funds. *See, e.g., Adams*, No. 03-2139 (D.D.C. May 25, 2005) ("The parties have agreed that the plaintiffs are not barred by this Order from the pursuit of further payment on the difference between the amount of the award herein and the amount of DCPS's prior payment *as may then be permissible* . . . ." (emphasis added)). Future expectations do not create vested interests. *Ass'n of Accredited Cosmetology Sch. v. Alexander*, 979 F.2d 859, 864 (D.C. Cir. 1992) ("Although we do not doubt [plaintiff's] submission that the schools expected to be eligible in the future, such an expectation did not constitute vested interest."). Because plaintiffs have no vested property interest in the excess fees, even a permanent cap does not rise to the level of a taking. *See Whatley v. District of Columbia*, 328 F. Supp. 2d 15 (D.D.C. 2004) aff'd, 447 F.3d 814 (D.C. Cir. 2006) ("[T]he *Calloway* decision, even coupled with the 'temporary' nature of appropriation act fee caps, is not sufficient to create a property interest in the excess fees, the denial of which constitutes a taking.").

**D. Interest**

Post-judgment interest is appropriate when a district court enters a judgment awarding reasonable attorneys' fees under IDEA. *See Akinseye v. District of Columbia*, 339 F.3d 970, 972; *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 48; *cf.* 2002 Appropriations Act. District of Columbia Appropriations Act of 2002, Pub. L. No. 107-96, § 140(a), 115 Stat. 923 (2001) (requesting that the District submit a report on outstanding judgments for fee awards against them, specifying "the principal balance remaining due on each judgment as of the date of the report, the amount of interest due as of December 31, 2001 on each unpaid amount; and the prospective annual rate of interest applicable to the judgment as of January 1, 2002."). However, plaintiffs apply the incorrect interest rate for federal judgments.

Plaintiffs ask the Court to apply D.C. Code Section 2-221.01(1) (2014), which provides that "each agency of the District of Columbia government . . . which acquires property or services from a business concern but which does not make payment for each complete delivered item of property" must pay interest in accordance with that section. However, it is the plaintiff children and parents rather than the District that received the legal services at issue in this case.

The appropriate interest rate is stated in 28 U.S. Code Section 1961(a), which provides:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

28 U.S.C. § 1961(a). Accordingly, Plaintiffs are entitled to post-judgment interest calculated at the statutory rate on each award under 28 U.S.C. § 1961(a).

### III. CONCLUSION

For the aforementioned reasons, the District must pay plaintiffs $4,000—less any amount already paid for each action in each of the consolidated cases, excepting *Gaskins*, No. 00-592.

Although the Court specifically ordered the parties to submit written reports detailing the amount awarded and the amount already paid in each case, ECF No. 62, and held an extensive hearing on the issue, the parties have nonetheless failed to provide the information sufficient to determine the exact amount owed to plaintiffs in each of the consolidated cases. As such, the Court will refer this matter to Magistrate Judge Harvey for a report and recommendation on the total amount owed on each claim at issue in these consolidated cases. Magistrate Judge Harvey shall also work with the parties to calculate the amount of interest due from the date of judgment until October 1, 2015, so that any further statutory change authorizing additional payments in the outstanding judgments will be readily actionable. Counsel for the parties shall make every effort

to reach agreement on a proposed order for payment of specific amounts in each case, and Magistrate Judge Harvey shall include with his Report and Recommendation proposed orders for entry in each individual case.

Except as to Gaskins, this Order shall constitute a further renewal of the judgments beyond the 12 year expiration date.

A separate order consistent with this Opinion shall issue on this date.

Signed by Royce C. Lamberth, United States District Judge, on August 17, 2015.