# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **KEITH ALLEN, et al.,** ) | |
| ) | |
| ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No: 00-cv-591-RCL** |
| ) | |
| **DISTRICT OF COLUMBIA,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

## I.  INTRODUCTION

This opinion concerns eleven consolidated cases[1] brought many years ago against the District of Columbia for violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA").  As prevailing parties, plaintiffs filed motions seeking enforcement of court orders awarding them attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(1).  On August 17, 2015, this Court found that the "District must pay plaintiffs $4,000—less any amount already paid—plus interest, for each action in the consolidated cases, excepting *Gaskins*, No. 00-592." Aug. 18, 2015 Order at 1, ECF No. 71.  It referred the matter to Magistrate Judge Harvey for a Report and Recommendation on the total amount owed by the District in each action.  *Id.* at 2.

---

[1] *Abraham v. District of Columbia*, No. 01-27; *(AC) Clark v. District of Columbia*, No. 06-439; *Adams v. District of Columbia*, No. 03-2139; *Allen v. District of Columbia*, No. 00-591; *Bradley v. District of Columbia*, No. 99-3188; *Gaskins v. District of Columbia*, No. 00-592; *Isaac v. District of Columbia*, No. 00-122; *Jones v. District of Columbia*, No. 00-593; *McDowell v. District of Columbia*, No. 00-594; *Thomas v. District of Columbia*, No. 03-1791; *Wingfield v. District of Columbia*, No. 00-121.

For the reasons stated below, the Court will accept and adopt in part, modify in part, and reject in part Judge Harvey's Report and Recommendation. It finds that the District owes no additional fees or costs in *Abraham v. DC*, No. 01-cv-27, *AC (Clark) v. DC*, No. 06-cv-439, *Allen v. DC*, No. 00-cv-591, *Isaac v. DC*, No. 00-cv-122, *Jones v. DC*, No. 00-cv-593, *McDowell v. DC*, No. 00-cv-594, *Thomas v. DC*, No. 03-cv-1791, and *Wingfield v. DC*, No. 00-cv-121. However, the District still owes $199,913 in fees and $779 in costs in *Adams v. DC*, No. 03-cv-2139, and an additional $20,000 in fees in *Bradley v. DC*, No. 99-cv-3188. The District additionally owes interest in every case.

## II.    BACKGROUND

### A.    Factual and Procedural History

The plaintiffs in the consolidated cases at issue (three of which are multi-plaintiff cases—*Abraham*, *AC (Clark)*, and *Adams*) brought claims against the District of Columbia pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*. The IDEA provides that courts may award attorneys' fees and cost to prevailing parties. *See* 20 U.S.C. § 1415(i)(3)(B)(I). In 1999, Congress capped the fees payable by the District in such cases. *See* Omnibus Consolidated and Emergency Supplemental Appropriation Act of 1999, Pub. L. No. 105-277, § 130, 112 Stat. 2681 (1998). In 2003, Congress set a flat cap of $4,000 on attorneys' fees for IDEA actions. *See* Consolidated Appropriations Act of 2003, Pub. L. No. 108-7, § 144, 117 Stat. 11 (2003). In 2009, Congress passed the final rider relating to IDEA attorneys' fees, stating:

> Notwithstanding section 615(i)(3)(B) of the Individuals with Disabilities Education Act (20 U.S.C. § 1415(i)(3)(B)), none of the funds contained in this Act or in any other Act making appropriations for the government of the District of Columbia for fiscal year 2009 or any succeeding fiscal year may be made available—
>
> > (1) to pay the fees of an attorney who represents a party in or defends an IDEA proceeding which was initiated prior to the date of the enactment of this Act in an amount in excess of $4,000 for that proceeding.

Omnibus Appropriations Act, Pub. L. No. 111-8, § 814, 123 Stat. 524 (2009). The 2009 rider did not provide a fee cap for future cases.

From 2001 through 2009, judgments (some of which were consent) were entered against the District for attorneys' fees and costs in each of the consolidated cases. Those judgments ranged from $40,635.50 (*Allen*) to $2,500,000.00 (*Abraham*). After plaintiffs brought motions to enforce the outstanding judgments and collect their fees, this Court found that, according to the law summarized above, "the District is prohibited at this time from paying more than $4,000 per action in this case for cases initiated prior to March 11, 2009, which includes all of the consolidated cases." *See* Aug. 18, 2015 Mem. Op. at 9, ECF No. 70. Plaintiffs were therefore "entitled by statute to collect $4,000 per action in each case prior to 2009, less what has already been paid." *Id.* at 10. "[T]he term 'action' in the fee cap provisions 'encompasses both administrative proceedings and subsequent fee requests brought in the court by prevailing parties,'" so "the District is not required to pay up to the fee cap a second time where administrative actions are subsequently brought to federal court." *Id.* at 11. In every case except *Bradley* and *Wingfield*, some payment had been made either pre- or post-judgment, or both. Thus, plaintiffs were entitled to $4,000 per action—as evidenced by Hearing Officer Decisions (HODs)—minus whatever had been paid.

This Court also found that "[p]ost-judgment interest is appropriate when a district court enters a judgment awarding reasonable attorneys' fees under IDEA," and that "[p]laintiffs are entitled to post-judgment interest calculated at the statutory rate on each award under 28 U.S.C. § 1961(a)." *Id.* at 14–15. Section 1961 dictates that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar

week preceding [] the date of the judgment" and that "[i]nterest shall be computed daily to the date of payment . . . and shall be compounded annually." 28 U.S.C. § 1961(a)–(b). Interest is compounded on the date of the judgment. *See, e.g., Jefferson v. Milvets Sys. Tech., Inc.*, 986 F. Supp. 6, 11–12 (D.D.C. 1997). The Court thus ordered that "[t]he District must pay plaintiffs $4,000—less any amount already paid—plus interest, for each action in each of the consolidated cases." Aug. 18, 2015 Order at 1.

After finding that the parties failed to provide the necessary information to determine the exact amount owed to plaintiffs in each case, the Court referred this matter to Magistrate Judge Harvey for a report and recommendation on the total amount owed on each claim and the amount of interest due from the date of judgment until October 1, 2015. *Id.* at 15. Because of the interplay amongst Judge Harvey's Report and Recommendation and each party's objections thereto, the Court will summarize Judge Harvey's final calculations and then will turn to the specific issues that are now before this Court: 1) Judge Harvey's treatment of evidence/reliance on the District's payment documentation and plaintiffs' objections thereto; 2) whether and how much to credit payments made in the *Adams* case; 3) whether plaintiffs have waived objections regarding the number of HODs in the *Bradley* case; and 4) the interest due in each case. [2]

---

[2] The court will not address the objections raised by either party and overruled by Judge Harvey that have not been raised before this Court, *e.g.*, statute of limitations and claim preclusion, or sections of the Report and Recommendation where no objection has been lodged, *e.g.*, overlapping plaintiffs.

In addition, Plaintiffs have made several independently numbered objections. Plaintiffs first argue that the District has "launched an all-out assault and collateral attack on [seasoned] judgments, . . . [seeking] to re-litigate matters that had already been resolved and included in the negotiations by both parties many years ago." Pls.' Objections at 1. In addition, although not exactly an objection, plaintiffs argue that "[d]uring the negotiations with DCPS this counsel negotiated away, conceded and gave up, and/or the various judges of this bench acceded to the District's request and reduced the amount actually due and owing to this counsel." *Id.* at 18. Even given these concessions, "the District now beseeches the Court to permit the District to collaterally attack the judgments and to reduce the amount to be paid this counsel even further, . . . seeks the Court's acceptance of the District's false representation that post-judgment payments were made, . . . [and] even opines that this counsel owes the District $200,000 as reimbursement for a non-existent never made overpayment." *Id.* at 18–19. Finally, plaintiffs ask that instead of the 45 day deadline for payment imposed by Judge Harvey, defendants be required to make payment within 10 days. *Id.* at 20. Except for the final

## B.      Judge Harvey's Calculations

Over the course of many months, Judge Harvey heard the evidence submitted by the parties as well as their respective arguments.   On September 28, 2016, he issued a Report and Recommendation discussing this evidence and the arguments, and responding to the parties' objections.   Along with his Report and Recommendation, Judge Harvey calculated the fees due in each case (up to $4,000 per administrative action at issue as evidence by an HOD) as well as the costs incurred.   He summarized his findings in extensive "Amounts Due" charts in the Appendix to the Report and Recommendation that include 1) the number of HODs; 2) the fee cap (HODs x $4,000); 3) costs incurred to date; 4) fees paid to date; 5) costs paid to date; 6) the source data on HODs and payments; 7) the remaining fees due up to the $4,000 fee cap; and 8) the remaining costs due.   According to this chart,[3] the following fees and costs are still due in each case:

| Case | Remaining Fees Due | Remaining Costs Due |
|------|-------------------:|--------------------:|
| *Abraham v. DC*, 01-27 | $250,077.25 | $0 |
| *AC (Clark) v. DC*, 06-439 | $24,743 | $324 |
| *Adams v. DC*, 03-2139 | $199,913 | $779 |
| *Allen v. DC*, 00-591 | $0 | $0 |
| *Bradley v. DC*, 99-3188 | $4,000 | $104.22 |
| *Isaac v. DC*, 00-122 | $2,403.50 | $289 |
| *Jones v. DC*, 00-593 | $0 | $0 |
| *McDowell v. DC*, 00-594 | $13,500 | $294.50 |
| *Thomas v. DC*, 03-1791 | $13,292 | $408 |
| *Wingfield v. DC*, 00-121 | $4,000 | $245 |
| **TOTAL** | **$511,928.75** | **$2,443.72** |

With respect to interest due on each judgment for attorneys' fees, Judge Harvey calculated the interest based on the full judgments in each case—consent or otherwise—not on the fees available under the $4,000 statutory caps.   Judge Harvey also considered partial payments that had

---

objection regarding date of payment, which is at this point moot, the Court views the other arguments not as independent objections, but rather as statements that support plaintiffs' other objections.

[3] All of the charts contained herein are attached in an Appendix to this Memorandum Opinion.

been made in each of the cases, with the exceptions of *Bradley* and *Wingfield*, where no payments had been made. Some payments were made pre-judgment, which were acknowledged in the applicable consent decrees and/or were conceded to by plaintiffs (*i.e.*, *Abraham*, *AC (Clark)*, *Adams*, and *Thomas*). Where payments were made pre-judgment, Judge Harvey calculated interest based on the remaining balance of the judgment (*i.e.*, the judgment amount minus the pre-judgment payments). So, for example, in *Abraham*, the total judgment was for $2,500,000, but $497,922.75 had been made in pre-judgment payments. Thus, Judge Harvey calculated interested based on the remaining balance of $2,002,077.25 ($2,500,000 – $497,922.75).

Judge Harvey also found that other payments had been made,[4] which the District claims to have made post-judgment. The District, however, failed to offer evidence of the dates of payment. Judge Harvey therefore listed those payments as made post-judgment, but because he could not "accurately date the payments that Defendant made, [he] . . . calculate[d] interest based on the original principal and then subtract[ed] the amount of the payment from that figure." R&R Appendix n.8, ECF No. 96-1. Thus, for example, in *Allen*, judgment was entered for $40,635.50, and payment was made for $11,973.50. Judge Harvey calculated interest based on the $40,635.50, then, from that interest figure, subtracted out $11,973.50 to get the remaining balance due.

The interest due on each judgment is summarized in the "Judgments Chart" of the Appendix to the Report and Recommendation. The Chart includes: 1) the date of judgment; 2) the type of judgment; 3) the amount of judgment; 4) pre-judgment payments; 4) post-judgment payments; 5) the remaining balance due on the judgment; 6) the interest rate used; and 7) the amount of remaining judgment plus interest remaining as of 10/1/2015. Judge Harvey calculated

---

[4] As explained further below, plaintiffs claim that they never received any post-judgment payments with the exception of one payment for $313.00.

interest according to 28 U.S.C. § 1961. According to this chart, the following amounts of interest are due in each case:

| Case | Remaining Interest Due (as of 10/1/2015) |
|------|------------------------------------------|
| *Abraham v. DC*, 01-27 | $794,496.76 |
| *AC (Clark) v. DC*, 06-439 | $4,463.88 |
| *Adams v. DC*, 03-2139 | $402,942.82 |
| *Allen v. DC*, 00-591 | $15,784.65 |
| *Bradley v. DC*, 99-3188 | $21,039.54[5] |
| *Isaac v. DC*, 00-122 | $13,263.73 |
| *Jones v. DC*, 00-593 | $31,430.59 |
| *McDowell v. DC*, 00-594 | $34,531.54 |
| *Thomas v. DC*, 03-1791 | $3,644.34 |
| *Wingfield v. DC*, 00-121 | $12,802.13 |
| **TOTAL** | **$1,334,399.98** |

## C. Evidence of Payment

Judge Harvey's Report and Recommendation also describes in detail many of the difficulties that have been present in these cases with regard to determining the proper fee award, such as lack of available evidence, gaps in available evidence, questions about reliability of the evidence, and poor or unhelpful recordkeeping systems. Nonetheless, using what was available to him, Judge Harvey enunciated the following overarching principles. First, he found that plaintiffs had the burden of establishing their entitlement to an award of fees and the appropriate amounts of the judgments they sought to enforce, that the District had the burden of proving payment of the judgments, and that where the District made a *prima facie* case of payment, the burden shifted back to plaintiffs to prove that payment did not occur. R&R at 6–8, ECF No. 96. The parties could use "all competent and relevant evidence" to prove that a payment had or had not been made. *Id.* at 6–7. With respect to interest, Judge Harvey found that the statutory text requires the interest

---

[5] There appears to be a small mathematical error in Judge Harvey's *Bradley* calculation. Judge Harvey found that the amount of the remaining judgment plus interest remaining as of 10/01/2015 equaled $74,654.29. According to this Court's calculation, however, this sum actually equals $74,578.38. Thus, the remaining interest due should equal $21,053.63. Nonetheless, because additional interest has accrued since 10/01/2015, this figure has been recalculated.

to run from the date of judgment, not from the date that the 2009 fee cap was enacted. *Id.* at 8. Finally, Judge Harvey determined that it was appropriate to apply "the fee payment cap of $4,000 not per civil action filed, but per administrative action at issue as evidenced by an HOD." *Id.* at 9.

Because of the evidentiary difficulties mentioned above—such as the fact that "neither Plaintiffs' counsel nor DCPS keeps IDEA attorney's fees records in a manner that would enable the undersigned to easily make the calculations at issue," R&R at 5—Judge Harvey relied in large part on the District's payment documentation, including documents showing the District's intent to make certain payments. *Id.* at 17–18. Plaintiffs objected to using these documents as evidence of payments made because plaintiffs' records reflected a lower payment or no payment at all. *Id.* Judge Harvey found, however, that "based on the burden-shifting framework described above, Defendant's payment documentation constituted prima facie evidence of payment." *Id.* at 18. Acknowledging that the documents were drafted by the District and used to its benefit, Judge Harvey found that they bore the following indicia of reliability:

> [The District's] documentation represents the most comprehensive contemporaneous analysis of the amounts owed and paid for each plaintiff in these cases. Plaintiffs have admitted as much before the undersigned in that they have relied upon the very same documents in determining in some cases what amounts are owed and what amounts have been paid. It is also worth noting that although Plaintiffs objected to the undersigned's reliance on Defendant's records in certain instances, those records were consistent with Plaintiffs' records for the vast run of claims.

*Id.* at 18 (internal citations omitted). Furthermore, "while Plaintiffs maintain that they cannot vouch for the accuracy of Defendant's documentation, they offer nothing to supplant it other than their representations as to what they have been paid." *Id.* Judge Harvey also rejected plaintiffs' argument that these records could not constitute evidence of payment because "these documents were generated based on a prepayment process used by the District to receive IDEA attorney's fee invoices, review them, and then pay them to the extent allowed by law," and "[t]he system was directed at actually paying invoices contemporaneous to when they were received and was not

created for the purpose of litigation." *Id.* at 19–20. Finally, Judge Harvey noted that "although Defendant's records had their faults and gaps, the undersigned concludes that Plaintiffs' payment recordkeeping is unreliable by comparison, thereby undermining Plaintiffs' ability to challenge Defendant's records with their own," and that "[a]ll Plaintiffs offered at the hearing was their bare representation that their own records reflect a different amount than Defendant's records." *Id.* at 20. As this was not sufficient to overcome the District's *prima facie* showing of payment, Judge Harvey relied on the District's records. *Id.* at 20–21.

Plaintiffs object to Judge Harvey's reliance on the District's records. They argue that those documents are inaccurate and do not represent *prima facie* proof of payment. Pls.' Objections at 3–5, ECF No. 98. According to plaintiffs, the District's proof of intent to pay does not constitute proof of actual payment. *Id.* at 5. In addition, plaintiffs argue that they have provided any records they have (such as proof of invoice and evidence that additional HODs were not included in the District's documentation), and that it is impossible to prove that they have not been paid beyond a "bare representation." *Id.* at 6–8. They also argue that Judge Harvey erred by finding that he was unable to use plaintiffs' invoices as they were submitted to the District informally. *Id.* at 12–14. They ask that "[g]iven [p]laintiffs' numerous concessions to their detriment, their inability to prove a lack of payment, the inaccuracy of [d]efendant's records, and [p]laintiffs' counsel's honesty and fair-mindedness in these proceedings, . . . that in those instances where [counsel] has only been able to make a 'bare representation' [that he has not been paid], credit be given for such." *Id.* at 9.

Plaintiffs specifically dispute that certain fees have been paid in *Abraham v. DC*, No. 01-27. In *Abraham*, a consent judgment for $2,500,000 in fees and costs was entered on June 17, 2005. Judge Harvey found that 187 HODs were at issue in this case so, pursuant to the $4,000

statutory fee cap, $748,000 was due in fees.  He then found that $497,922.75 had been paid to date, and therefore that the remaining fees due totaled $250,007.25.  He specifically found that the following payments had been made with respect to the following individual plaintiffs:

| Plaintiff | Payment Made |
|---|---|
| Downing, C. | $12,000 |
| Gray, Gr. | $6,920 |
| Parker, S. | $4,000 |
| Wood, Aa. | $6,560 |

With respect to plaintiffs Downing and Gray, Judge Harvey found that the District's documentation reflected the above payments and that plaintiffs offered no evidence to contradict the District's prima facie showing.  R&R Appendix nn. 6, 8.  With respect to plaintiffs Parker and Wood, Judge Harvey found that plaintiffs appeared to have made typographical errors in stating the amounts they had been paid, and that they offered no evidence to contradict the District's prima facie showing of payment.  *Id.* nn. 10, 13.

Plaintiffs, however, argue that they have only received payments in the following amounts:

| Plaintiff | Payment Received |
|---|---|
| Downing, C. | $8,300 |
| Gray, Gr. | $5,620 |
| Parker, S. | $35 |
| Wood, Aa. | $5,560 |

Therefore, plaintiffs represent that they have only received the payments listed above and argue that they are due an additional $10,000.

Plaintiffs also dispute the fees paid in *AC (Clark) v. DC*, No. 06-cv-439.  In *AC (Clark)*, a judgment for $333,613.19 in attorneys' fees and costs was entered on December 15, 2009.  Judge Harvey found 38 HODs were at issue, so, according to the statutory fee caps, plaintiffs were entitled to $152,000 in attorneys' fees and $1,835 in costs.  Judge Harvey found that the District had paid $127,257 in fees and $1,511 in costs, so the remaining fees due totaled $24,743, and the

remaining costs due totaled $324. He specifically found that the following payments had been made with respect to the following individual plaintiffs:

| Plaintiff | Payment Made (Fees) | Payment Made (Costs) |
|-----------|---------------------|----------------------|
| Jackson, N. | $4,000 | $18 |
| Ward, R. | $4,000 | $111 |
| Watkins, M. | $12,000 | $138 |

Plaintiffs argue, however, that they have no evidence of these payments and that they have never conceded that payment of costs was made. Therefore, they argue that they are due the full amounts listed above, totaling an additional $20,000 in fees and $267 in costs.

**D. Adams v. DC**

In *Adams v. DC*, No. 03-cv-2139, two consent judgments were entered for $1,473,406 and $25,360 for attorneys' fees and costs on February 1, 2005 and July 28, 20015, respectively. After finding that 141 HODs were at issue, Judge Harvey concluded that plaintiffs were due $564,000 in attorneys' fees and $5,026 in costs. He concluded that $4,247 in costs had been paid. When determining the amount of fees that had already been paid, Judge Harvey found that the two consent judgements acknowledged payments of $364,087. Based on the evidence submitted to him, however, Judge Harvey found that the sum of pre-judgment payments in *Adams* totaled $569,194.05. After revising his calculations, Judge Harvey found that this sum equaled $517,503. Plaintiffs' objected and stated that they had received no post-judgment payments for fees in *Adams*, and that Judge Harvey could not "go behind the [sacrosanct] judgment" and use payment figures different from those in the judgment. *Id.* Plaintiffs thus argued that only the $364,087 listed in the consent judgments "should be used to reduce the amount of the judgment for the purposes of [Judge Harvey's] calculation of the present value of those judgments" and that the court was "not empowered to effectively amend the figures used in the consent judgment by crediting toward those judgments payments which were not reflected in the negotiated payment amounts identified

therein." *Id.* at 26–27. The District argued that because Judge Harvey had found "that DCPS has paid more in the *Adams* case than is stated in the consent judgment, [he] should set the $364,087 payment figure in the *Adams* consent judgments to the side as a mere mathematical error" and "give [the District] credit for prejudgment payments it appears to have made, based on the [Judge Harvey's review of the record evidence." *Id.* at 27.

Judge Harvey changed his decision and declined to give the District credit for the payments it made, finding that "[w]hatever the reason for the decision to put the $364,087 figure in the consent judgment—whether negotiation or mere accounting error—the undersigned cannot now gainsay the parties' decade-old agreement which was affirmed by this Court. Moreover, because the undersigned cannot accurately date any of DCPS' payments, it will not assume that any payment in excess of the amount stated in the consent judgments are the result of post-judgment payment." *Id.* at 27. Supporting this conclusion was the fact that the District could provide no evidence regarding the dates of payments (*i.e.*, pre- or post-judgment), and to credit the District for payments it appears to have made "would be to draw an unsupported inference in favor the party who bears the burden of persuasion on this issue." *Id.* at 28. Judge Harvey thus determined it was appropriate to use the consent judgment figure of $364,087 in determining how much the District had already paid in fees and costs. Therefore, Judge Harvey found that plaintiffs were due $199,913 in fees ($564,000 - $364,087 = $199,913) and $779 in costs.

The District objects to Judge Harvey's treatment of the *Adams* case. It argues that Judge Harvey should credit the District the $569,194.05 in payments made—although the District fails to acknowledge the corrected figure of $517,503—and therefore that the District paid plaintiffs an excess of $205,107.05 in attorney's fees ($569,194.05 - $364,087.00). Again, Judge Harvey found that plaintiffs were due $564,000 under the fee caps. Thus, if the Court credits the District

$569,194.05, it has overpaid by $5,194.05. If the Court credits the District $517,503, it still owes

plaintiffs $46,497 in fees and costs, as opposed to the $200,692 found by Judge Harvey. Plaintiffs

respond with the same argument above—that the District's payment documentation is not reliable

evidence of payments made. Thus, because the $569,194.05 and $517,503 sums came from the

District's payment documentation, plaintiffs argue that those sums are inaccurate, that they only

ever received payment of $364,087, and that they never received any payments post-judgment.

Plaintiffs also object to the *Adams* calculations on the grounds that although Judge Harvey

found that certain payments had been made with respect to specific plaintiffs, either those

payments were not made or were not made in the amounts determined by Judge Harvey. Judge

Harvey specifically found that the following payments had been made with respect to the following

individual plaintiffs:

| Plaintiff | Payment Made (Fees) | Payment Made (Costs) |
|---|---|---|
| Boney, A. | $6,122.50 | $0 |
| Butler, R. | $12,976.00 | $73 |
| Curtis-Walker, R. | $7,902.75 | $60 |
| Hopkins, A. | $4,658.00 | $0 |
| Perkins, L. | $7,228.25 | $0 |
| Woodberry, J. | $7,038.00 | $0 |
| Woodberry, S. | $8,179.25 | $35[6] |

Judge Harvey also found that, with respect to plaintiff Wheeler, W., there were four HODs at issue,

for a fee cap of $16,000. He stated that in the parties' joint report, plaintiffs asserted that there

were six HODs at issue, but that the District's documentation reflected only four. Because

plaintiffs offered no evidence to contradict the District's prima facie showing on the number of

HODs, Judge Harvey used the District's figure.

---

[6] Judge Harvey received evidence from the District that it had paid $8,214.25, which is greater than the fees due plus
costs due sum calculated by Judge Harvey: $8,000 (fees) + $35 (costs) = $8,035. Because there was no basis on which
to apportion the payment between fees and costs, Judge Harvey credited $35 towards the costs paid, and the remainder,
$8,179.25, towards fees paid.

Plaintiffs argue, however, that there is either no evidence of payments for these plaintiffs or that they have only received payments in the following amounts:

| Plaintiff | Payment Received (Fees) | Payment Received (Costs) |
|---|---|---|
| Boney, A. | $0 | $0 |
| Butler, R. | $8,000 | $0 |
| Curtis-Walker, R. | $0 | $0 |
| Hopkins, A. | $0 | $0 |
| Perkins, L. | $0 | $0 |
| Woodberry, J. | $4,015 | $0 |
| Woodberry, S. | $4,030 | $0 |

With respect to plaintiff Wheeler, W., plaintiffs argue that, in the Joint Report, they stated that there were five HODs at issue, not six, and that "[d]ue to a copying error, only the front page of the additional HOD was included in the evidentiary packet of HODs. However, at the time the District's own attorneys defended the case, the District's own hearing officers heard and decided the case, and the District's own Student Hearing Office conducted the hearing. All of the foregoing had or should have the original or copy of each HOD." Pls.' Objections at 12. Plaintiffs therefore argue that "it is disingenuous for the District to now claim surprise or deny that there was an HOD. As such, there should be an additional HOD for this plaintiff, for a total of five, and an additional $4,000 owed." *Id.* In sum, plaintiffs argue that they are owed an additional $42,094.75 in fees and $133 in costs.

### E.    *Bradley v. DC*

When considering the *Bradley* case, Judge Harvey found that although plaintiffs asserted that there were six HODs at issue, Magistrate Judge Kay had previously indicated that only one HOD formed the basis of the *Bradley* suit. *See* R&R Appendix n. 97 (citing *Bradley* Oct. 9, 2001 Mem. Op. [ECF No. 47] at 2). Judge Harvey found that plaintiffs failed to object to Judge Kay's opinion and therefore waived the ability to challenge the factual finding that only one HOD was at issue. Plaintiffs argue that no waiver occurred because "the number of HODs was never

contemplated to be an issue at the time of the settlement negotiations and when [Judge Kay] issued the final judgment and order. The calculation per HOD was not an issue during those negotiations." Pls.' Objections at 14. Plaintiffs state they the six HODs were provided to Judge Harvey during the evidentiary hearing, and that pursuant to the fee caps, the District therefore owes $24,000 in fees. The District has failed to respond to plaintiffs' objection and makes no argument with respect to waiver in *Bradley*.

### F. Interest

The parties also dispute the interest due in each case. Again, Judge Harvey calculated the interest based on the full judgments in each case,[7] not on the fees available under the $4,000 statutory caps. Plaintiffs argue Judge Harvey was correct to calculate interest based on the full judgments, *i.e.*, that they are entitled to post-judgment interest on the full amounts of the judgments, not only on the amount owed under the $4,000 fee cap. The District argues that it owes interest only on the amount owed under the $4,000 fee cap, *not* on the full amounts of the judgments (as reflected in Judge Harvey's Judgements Chart).

Plaintiffs also object, however, to several aspects of Judge Harvey's interest analysis. First, plaintiffs object to Judge Harvey's treatment of undated payments. Judge Harvey found that the District had made undated payments in several of the cases, and offered no evidence showing the date of any payment. *See* R&R Appendix at 22 n.108. In calculating interest due, he listed such payments as made post-judgment, and "calculate[d] the interest based on the original principal and then subtract[ed] the amount of the payment from that figure." *Id.* He found that the following post-judgment payments had been made: $11,973.50 in *Allen*; $13,596.50 in *Isaac*; $16,568 in

---

[7] Where pre-judgment payments were made, Judge Harvey subtracted those payments from the total judgment amount and calculated interest based on the resulting number.

*Jones*; $2,540 in *McDowell*; and $10,708 in *Thomas*. *Id.* at 23–24 nn. 113–17. Plaintiffs claim that defendants have falsely claimed that they made post-judgment payments on outstanding judgments, that plaintiffs' counsel has never received any post-judgment payment (except $313 in *Thomas*) and that Judge Harvey erred by finding that a number of payments made by the District were post-judgment. Pls.' Objections at 2–3. Plaintiffs have recalculated the amounts at issue by calculating interest based on the full judgment, but, unlike Judge Harvey, have not subtracted out any post-judgment payments made to arrive at the balance due. *Id.* Plaintiffs also take issue with defendants' claims of making post-judgment payments in two additional objections. First, they argue that communications between counsel show that the District made no post-judgment payments. *Id.* at 15–17. Second, plaintiffs argue that the language contained in the consent judgments shows that post-judgment payments were not made. *Id.* at 17–18.

Plaintiffs further object to the interest rates used by Judge Harvey in certain cases in calculating interest due. They are as follows: 3.30% in *Abraham*; 0.37% in *AC (Clark)*; 2.89% in *Adams*; and 2.06% in *Wingfield*. Plaintiff state that the following interest rates should have been used: 3.39% in *Abraham*; 0.32% in *AC (Clark)*; 2.95% in *Adams*; and 4.00% in *Wingfield*. Plaintiffs state that they have recalculated the interest due using the National Cyber Services Post-Judgment Interest Calculator (http://postjudgmentinterest.com/), and ask their calculations be used.

Finally, the parties disagree regarding whether interest has stopped accruing and, if so, the date on which it stopped. As explained below, the District submitted a payment of $427,103.76 to plaintiffs on January 31, 2017, which the District states represents the fees, costs, and interest owed to plaintiffs based on Judge Harvey's Report and Recommendation. The District argues that it only owes interest up to November 9, 2016, the date on which the $427,103.76 payment was

submitted for processing. The District contends that "[p]ayment of funds was delayed to accommodate Plaintiffs' Counsel, who requested payment after January 1, 2017, for tax purposes." Def.s' Response to Court's May 22, 2017 Order at 2, ECF No. 113. Because plaintiffs have lodged the above-described objections with respect to fees and costs, and also lodge the aforementioned interest-based objections, they argue that they have not been paid in full. Given that plaintiffs argue that they have not been paid the full fees or interest due, they argue that they are entitled to interest accrued to date.

### G. Parties' Calculations

After the parties lodged their objections to the Report and Recommendation, on January 31, 2017, the District submitted a notice of payment to plaintiffs' counsel of $427,103.76 reflecting "the undisputed amount of attorney's fees owed to Plaintiff, including interest, based on the Magistrate Court's Report and Recommendation." Def.s' Notice of Payment at 1, ECF No. 106. After considering the parties' objections and the notice of payment, which did not explain the amounts paid in each case and did not explain the sums paid in fees vs. costs vs. interest, this Court found it necessary to seek further clarification. On May 3, 2017, it ordered the parties to submit reports explaining how much the District paid in outstanding fees, costs, and interest in each case, and the amounts still in dispute. On May 22, 2017, it ordered the parties to submit reports detailing the amount of interest ordered to be paid in each case, the amount of interest that has accrued since October 1, 2015, the interest rates used, the total interest due, the amount of interest paid to date, and the amount of interest still due.

The District submitted the following:

| Case | Fees Due (After R&R) | Fees Paid (Since R&R) | Costs Due (After R&R) | Costs Paid (Since R&R) | Interest Ordered as of 10/1/2015 (R&R) | Interest Accrued 10/2/2015 – 11/9/2016 | Interest Paid | Amount in Dispute |
|---|---|---|---|---|---|---|---|---|
| *Abraham v. DC*, 01-27 | $250,077.25 | $250,077.25 | $0 | $0 | $84,967.34 | $9,156.94 | $94,124.28 | $0 |
| *AC (Clark) v. DC*, 06-439 | $24,743.00 | $24,743.00 | $324 | $324 | $537.68 | $102.92 | $640.60 | $0 |
| *Adams v. DC*, 03-2139 | $199,913.00 | $0 | $779 | $0 | $61,877.25 | $9,550.13 | $0 | $200,692.00 |
| *Allen v. DC*, 00-591 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| *Bradley v. DC*, 99-3188 | $4,000.00 | $4,000.00 | $104.22 | $104.22 | $1,377.67 | $109.30 | $1,486.97 | $0 |
| *Isaac v. DC*, 00-122 | $2,403.50 | $2,403.50 | $289.00 | $289.00 | $1,309.13 | $103.07 | $1,412.20 | $0 |
| *Jones v. DC*, 00-593 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| *McDowell v. DC*, 00-594 | $13,500.00 | $13,500.00 | $294.50 | $294.50 | $7,316.15 | $566.33 | $7,882.48 | $0 |
| *Thomas v. DC*, 03-1791 | $13,292.00 | $13,292.00 | $408.00 | $408.00 | $5,764.12 | $749.42 | $6,513.54 | $0 |
| *Wingfield v. DC*, 00-121 | $4,000.00 | $4,000.00 | $245.00 | $245.00 | $1,266.18 | $97.04 | $1,363.22 | $0 |
| **Totals** | $511,928.75 | $312,015.75 | $2,443.72 | $1,664.72 | $164,415.52 | $20,435.15 | $113,423.29 | $200,692.00 |

Plaintiffs submitted the following:

| Case | Fees Due (After R&R) | Fees Paid (Since R&R) | Costs Due (After R&R) | Costs Paid (Since R&R) | Interest Ordered as of 10/1/2015 (R&R) | Ps Interest Calculated as of 10/1/2015 | Interest Accrued 10/1/2015 - 5/25/2017 | Interest Paid | Outstanding Fees/Costs in Dispute | Outstanding Interest in Dispute |
|---|---|---|---|---|---|---|---|---|---|---|
| *Abraham v. DC*, 01-27 | $260,077.25 | $250,077.25 | $0 | $0 | $794,496.76 | $822,781.00 | $113,819.00 | $94,124.28 | $10,000.00 | $839,805.00 |
| *AC (Clark) v. DC*, 06-439 | $44,743.00 | $24,743.00 | $591 | $324 | $4,462.82 | $3,857.83 | $1,090.00 | $640.60 | $20,267.00 | $4,282.00 |
| *Adams v. DC*, 03-2139 | $242,007.75 | $0 | $912 | $0 | $402,942.82 | $412,779.72 | $55,848.00 | $0 | $242,919.75 | $466,762.00 |
| *Allen v. DC*, 00-591 | $0 | $0 | $0 | $0 | $15,784.65 | $27,778.20 | $2,515 | $0 | $0 | $30,293.00 |
| *Bradley v. DC*, 99-3188 | $24,000 | $4,000.00 | $104.22 | $104.22 | $21,039.54 | $21,053.90 | $2,138.00 | $1,486.97 | $20,000.00 | $21,644.00 |
| *Isaac v. DC*, 00-122 | $2,403.50 | $2,403.50 | $289.00 | $289.00 | $13,263.73 | $26,879.59 | $2,529.00 | $1,412.20 | $0 | $27,967.00 |
| *Jones v. DC*, 00-593 | $0 | $0 | $0 | $0 | $31,430.59 | $48,033.29 | $4,350 | $0 | $0 | $52,383.00 |
| *McDowell v. DC*, 00-594 | $13,500.00 | $13,500.00 | $294.50 | $294.50 | $34,531.54 | $37,098.31 | $3,359.00 | $7,882.48 | $0 | $32,415.00 |
| *Thomas v. DC*, 03-1791 | $13,292.00 | $13,292.00 | $408.00 | $408.00 | $3,644.00 | $18,429.67 | $3,005.00 | $6,513.54 | $0 | $14,709.00 |
| *Wingfield v. DC*, 00-121 | $4,000.00 | $4,000.00 | $245.00 | $245.00 | $12,802.13 | $28,523.14 | $2,498.00 | $1,363.22 | $0 | $29,605.00 |
| **Totals** | $604,023.50 | $312,015.75 | $2,843.72 | $1,664.72 | $1,334,398.58 | $1,447,214.65 | $191,151.00 | $113,423.29 | $293,186.75 | $1,519,865.00 |

As these charts show, there is no dispute with respect to fees or costs still due in *Allen*, *Isaac*, *Jones*, *McDowell*, *Thomas*, or *Wingfield*. Disputes regarding fees due remain in *Abraham* and *Bradley*, and disputes regarding both fees and costs due remain in *AC (Clark)* and *Adams*. Disputes regarding interest due exist in every case.

## III. LEGAL STANDARD

"A district judge shall make a de novo determination of those portions of a magistrate judge's findings and recommendations to which objection is made." LCvR 72.3(c). "A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge, or may recommit the matter to the magistrate judge with instructions." *Id.*

# IV.    ANALYSIS

Based on the foregoing, this Court must determine the following: 1) how to treat the District's evidence of payment and whether to accept plaintiffs' representations that they have not been paid (and therefore calculate the appropriate fees due in *Abraham*, *AC (Clark)*, and *Adams*); 2) whether and how much to credit the District for payment in *Adams* and thus how much the District still owes; 3) whether plaintiffs have waived their objections with respect to *Bradley* and whether they are due any additional fees; 4) the appropriate interest due in each case.  With respect to interest specifically, this Court must determine: 1) whether interest should be calculated based on the full judgment or the amount due pursuant to the fee caps; 2) whether to accept Judge Harvey's treatment of undated payments; 3) the appropriate interest rates to use in calculating interest; and 4) the date on which interest stops accruing.  The Court takes each in turn.

## A.    Evidence of Payment

The Court first adopts Judge Harvey's analysis regarding burdens of proof concerning enforcement of judgments.  *See* R&R at 6–7.  According to this burden-shifting framework, "plaintiffs bear the initial burden to prove the amounts of the judgments they seek to enforce, . . . [*i.e.*,] the burden to prove the number of [HODs]. . . .  Defendant bears the burden to prove facts regarding payments it claims to have made, including the amount and date of any alleged payment. If [d]efendant comes forward with evidence of payment, the burden shifts back to [p]laintiffs to prove that payment did not occur."  *Id.*  (citing 50 C.J.S. Judgments §§ 882, 883; *Norwest Bank Neb., N.A. v. Philips Realty Co.*, 594 N.W.2d 3, 9 (Iowa 1999); *Steckler v. Steckler*, 293 S.W.2d 129, 135 (Mo. Ct. App. 1956); *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)).

As explained above, Judge Harvey relied largely on the District's payment documentation, which constitutes *prima facie* evidence of payment. *Id.* at 18. Even given certain reliability issues, Judge Harvey found that the District's "documentation represents the most comprehensive contemporaneous analysis of the amounts owed and paid for each plaintiff in these cases." *Id.* Importantly, plaintiffs "offer[ed] nothing to supplant [the District's documentation] other than their representations as to what they have been paid." *Id.* Furthermore, Judge Harvey found that plaintiffs' "payment recordkeeping is unreliable by comparison, thereby undermining [p]laintiffs' ability to challenge [d]efendant's records with their own." *Id.* at 20. To explain, plaintiffs' counsel was paid in one large check for fees relating to services provided to several different children, which he then attempted to parse how much of each check was attributable to each child, a difficult, confusing, and sometimes inexact process. *Id.* Plaintiffs' counsel also "could not accurately describe the process he used to search his records in preparation for the evidentiary hearing," and such records were not kept in any easily searchable electronic database. *Id.* Thus "[p]laintiffs' recordkeeping system made it almost impossible to be sure that the correct payment amounts were attributed to each child and, even assuming they were, that a portion of the amount attributed to a particular child could then be meaningfully attributed to one or more of the HODs at issue in this case, since many of these children had many other HODs not presented in these eleven consolidated cases." *Id.*

As they did before Judge Harvey, plaintiffs object again to the reliance on the District's payment documentation as *prima facie* evidence of payment, arguing that it is inaccurate and that plaintiffs have never vouched for its accuracy. Pls.' Objections at 3–4. Plaintiffs argue that the District has only presented evidence of intent to pay and that the only reliable evidence the District can provide is post-payment evidence, which no longer exists. *Id.* at 5. Plaintiffs also argue that

they are not simply relying on their own representations, but that in several instances plaintiffs provided invoices to the court. *Id.* at 6. Plaintiffs have invoices for Jackson, N. (*AC (Clark)*), Ward. R. (*AC (Clark)*), Watkins, M. (*AC (Clark)*), Boney, A. (*Adams*), Curtis-Walker, R. (*Adams*), Perkins, L. (*Adams*), and Hopkins, A. (*Adams*). Plaintiffs complain that Judge Harvey "applie[d] a double standard to [p]laintiffs' evidence as compared to [d]efendant's by stating that the invoices provided by [p]laintiffs 'do not bear on the question of how much had actually been paid in a given case, only that a particular amount had been billed,' while stating in the body of the following page that [d]efendant's 'documents indicate that a payment has been "approved" for a certain amount . . . . [and] that they constitute *prima facie* evidence of actual payment.'" *Id.* at 7. Plaintiffs thus conclude that "[i]t is impossible for [p]laintiffs to prove that [d]efendant never paid, beyond a 'bare representation,' and that "[w]here Defendant has asked for invoices, [p]laintiffs have provided them." *Id.* at 8.

The Court overrules plaintiffs' objections and accepts and adopts Judge Harvey's treatment of the evidence in this case. It should be noted again the evidentiary difficulties in this case. Many of the consolidated cases were filed seventeen years ago, and the most recent was filed eleven years ago. The judgments are nearly as old. Neither party kept attorneys' fees records in a manner that allows the Court to easily make the calculations at issue, and the evidence presented to Judge Harvey was often incomplete, unreliable, and less than crystal clear. All of the arguments regarding evidence now raised by plaintiffs were also raised to and rejected by Judge Harvey. As Judge Harvey noted, he was forced to rely on "logic and fairness and a concerted effort to make sense of a confused and incomplete record." R&R at 6. Deploying those same principles, the Court agrees with Judge Harvey's findings. First, the Court concludes that the District's evidence does constitute *prima facie* evidence of payment given the lack of available evidence. As Judge

Harvey noted, "these documents were generated based on a prepayment process used by the District to receive IDEA attorney's fee invoices, review them, and then pay them to the extent allowed by law. The system was directed at actually paying invoices contemporaneous to when they were received and was not created for the purpose of litigation. Plaintiffs offered no evidence that Defendant's system of processing fee invoices was inherently unreliable." R&R at 19–20. The District's payment documentation is not perfect evidence of payment. But, given the serious evidentiary difficulties in these cases, it is "the most comprehensive contemporaneous analysis of the amounts owed and paid for each plaintiff in these cases." R&R at 18. Furthermore, plaintiffs have not presented new evidence to this Court that shows that these documents are unreliable.

Plaintiffs have generally offered two categories of rebuttal evidence to show lack of payment or underpayment. First, they offer plaintiffs' counsel's mere representations that he has not received payments or has received payments in a different amount than the District claims. The court does not question plaintiffs' counsel's honesty and integrity, but it cannot accept representations of nonpayment or underpayment as *evidence* of such nonpayment or underpayment where plaintiffs have not offered logs, receipts, or actual evidence aside from the invoices described below.

Second, plaintiffs argue that they have provided fee invoices that indicate that they billed the District for a certain child's fees to rebut the District's evidence of payment. Again, however, this Court concurs with Judge Harvey that the invoices "do not bear on the question of how much had actually been paid in a given case, only that a particular amount had been billed." R&R at 18 n.15. Therefore, given that the Court has determined that the District's payment documentation constitutes *prima facie* evidence of payment, the burden shifted back to plaintiffs and they failed to sufficiently rebut evidence of payment.

This analysis is also relevant to plaintiffs' arguments regarding post-judgment payments. Plaintiffs again argue that they received no post-judgment payments. Again, plaintiffs' counsel represents to the Court that he did not receive these payments and asks the Court to credit those representations. As explained above, the Court cannot do so. The Court further agrees that Judge Harvey's treatment of undated payments. When calculating the interest due, Judge Harvey "calculate[d] interest based on the original principal and then subtract[ed] the amount of the payment from that figure." R&R Appendix n.8. Judge Harvey could have assumed that the payments were made immediately upon judgment and calculated interest based on the judgment amount minus the payments made, which would have been more favorable to the District. He did not do so, thus resulting in higher interest amounts for plaintiffs. The Court finds that Judge Harvey took the most equitable approach. Given that plaintiffs were unable to rebut the District's payment evidence, but also considering that such payments were undated, the Court finds that Judge Harvey's treatment of those payments was fair.

**B.**    *Adams v. DC*

The District has raised just one objection to Judge Harvey's Report and Recommendation. It argues that it should be credited $569,194.05 for payments made in the *Adams* case. Again, this argument was made before Judge Harvey and was rejected. This Court agrees with Judge Harvey. The discrepancy in the payments identified by Judge Harvey and the pre-judgment payment amount specified in the consent judgments was due to settlement negotiations preceding the entry of the consent judgments where "both p[laintiffs and [d]efendant gave ground." R&R at 26. In those negotiations, "just as [p]laintiffs accepted a lower fee amount than what was invoiced, [d]efendant accepted a lower figure for the amount it had previously paid—likely because the evidence of those payments was hardly better than it is today." *Id.* at 27. This Court agrees that

given the inability to determine the reason for the lower figure in the consent judgment ($364,087) and the inability to date the District's payments, "it will not assume any payment in excess of the amount stated in the consent judgments are the result of post-judgment payment," and it "cannot now gainsay the parties' decade-old agreement which was affirmed by this Court." *Id.* at 27–28.

The Court also rejects the District's argument raised in its objections that by not crediting the District for these payments, plaintiffs' counsel is receiving a windfall. The Supreme Court has cautioned that an award of reasonable attorneys' fees should not produce windfalls to attorneys. *See Blum v. Stenson*, 465 U.S. 886, 894 (1984). That danger, however, is not present here. Plaintiffs' counsel has had his fees diminished not only by the statutory fee caps in place during the years that he completed work on these cases, but also during negotiations with the District. In *Adams* alone, plaintiffs' counsel conceded and gave up $631,460.00. *See* Pls.' Objections at 18. Furthermore, even though the consent judgments in *Adams* totaled $1,498,786, plaintiffs' counsel was only able to recover $564,000 pursuant to the fee caps. Therefore, the Court finds that plaintiffs' counsel would not receive a windfall if the Court refuses to credit the District the full $569,194.05.

In addition, the Court finds unpersuasive the District's reliance on the following statement by the Supreme Court:

> In many cases, attorney's fees . . . are not paid by the individuals responsible for the constitutional or statutory violations on which the judgment is based. Instead, the fees are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services.

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010). As explained by plaintiffs, because the District of Columbia's budget is controlled by the United States Congress, "[t[he federal government is appropriating the money to pay [p]laintiffs' counsel's fees, not the D.C. Council or any local government agency." Pls.' Response to Def.'s Objections at 6, ECF No. 101.

Furthermore, "the District's litigation budget is separate from its education budget. *See* D.C. Act 21-148, Fiscal Year 2016 Budget Support Act of 2015, 62/34 D.C. Reg. 01095 (Aug. 14, 2015) (enacting the fiscal year 2016 budget for the District of Columbia and separating the education and litigation budgets). The money that is used to pay its litigation expenses is separate from the money that is used for education." *Id.* at 7. Due to both of these considerations, there is no danger that the money that the District must pay for fees in these cases will be taken from or unavailable for use "for programs that provide vital public services." *Perdue*, 559 U.S. at 559. Thus, the Court overrules the District's objection and adopts Judge Harvey's Report and Recommendation with respect to *Adams*.[8]

### C.    *Bradley v. DC*

In *Bradley v. DC*, No. 99-cv-3188, Magistrate Judge Kay issued an opinion granting in part and denying in part plaintiffs' motion for attorney's fees. *See* Memorandum Opinion, *Bradley v. District of Columbia* (No. 99-cv-3188), ECF No. 47. In the factual background of that opinion, Judge Kay describes a HOD after a hearing held on September 22, 1999 regarding DCPS's obligation to pay for the child's schooling. *Id.* at 2. After finding that plaintiffs were the prevailing parties, Judge Kay discussed the inapplicability of the fee caps. *Id.* at 9–10. He found, pursuant to *Calloway, et al. v. District of Columbia*, 216 F. 3d 1 (D.C. Cir. 2000), "that the Congressionally mandated fee cap does not limit this Court's authority to award attorney's fees in excess of the cap." *Id.* at 9. Judge Kay then proceeded to calculate the reasonable attorneys' fees due based on the applicable rates and the number of hours billed. *Id.* at 11–17. As explained above, even though

---

[8] The Court also overrules plaintiffs' objections with regard to plaintiff Wheeler in *Adams*. In their objections, plaintiffs assert that there were five HODs at issue, not four as found by Judge Harvey, and due to a copying error, only the front page of the fifth HOD was included in the evidentiary packet. Nonetheless, the transcript of the evidentiary hearing shows that Judge Harvey was unable to conclude—based on only the front page—that plaintiffs had prevailed in this HOD. *See* Sept. 7, 2016 Hearing Transcript at 58:6–60:17, ECF No. 97. In their objections, plaintiffs do not state that they prevailed on this HOD, nor do they provide evidence that they prevailed. Therefore, the Court finds that plaintiffs are not due an additional $4,000 for this fifth HOD.

plaintiffs asserted that there were six HODs with respect to *Bradley*, Judge Harvey found that because plaintiffs failed to object to Judge Kay's opinion, they waived the ability to challenge the finding that there was only one HOD at issue.

This Court disagrees. Although Judge Kay discussed a specific HOD in the factual background of his opinion, the specific issue of the number of HODs was not contemplated by Judge Kay. As noted above, he found that he was not bound by the fee caps in determining the proper fee award, and he calculated fees based on lodestar number of number of hour multiplied by reasonable rates. He did not calculate fees due based on number of HODs multiplied by fee cap, which is the calculation at issue here. Furthermore, the Court notes that plaintiffs here have specifically objected to Judge Harvey's finding of waiver. The District, however, has completely failed to respond to plaintiffs' argument. Because the issue of number of HODs was not present before Judge Kay, and because the District has failed to argue that Judge Harvey's finding of waiver was proper, this Court finds that Judge Harvey erred in finding waiver, that plaintiffs did not waive this argument, and that plaintiffs are entitled to fees for the six HODs present in *Bradley*—$24,000.

### D. Interest

The Court first determines that Judge Harvey correctly calculated interest based on the full attorneys' fees judgments in each case, as opposed to the fee award under the statutory fee caps. The District's current position regarding interest due—that it only owes interest on the amount of the judgments that it may pay under the fee caps—appears to be a new one. The District's position before Judge Harvey was that interest should be calculated from the date that the 2009 fee cap was enacted, not from the date of judgment. This Court concurs with Judge Harvey's decision to reject that argument as the statute precisely states that "interest shall be calculated from the date of the

entry of the judgment." 28 U.S.C. § 1961(a). Furthermore, the District's current argument does not appear in its objections to the Report and Recommendation or in its opposition to plaintiffs' objections. In fact, the District does not mention interest at all. The District's current argument *only* came to this Court's attention on June 1, 2017, after this Court twice asked the parties to clarify their positions regarding the amounts still due after partial payment in January 2017. Under Local Rule 72.3(b), parties may file written objections to a magistrate judge's report and recommendation within fourteen days, which must "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection." LCvR 72.3(b). Failure to do so "may waive appellate review of a District Court order adopting the magistrate judge's report." *Id.* The District failed to timely object to this portion of Judge Harvey's Report and Recommendation.

Furthermore, nothing in the statute indicates that judgment should be calculated based on anything other than the full judgment amounts. The statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). This Court previously stated that that "[p]ost-judgment interest is appropriate when a district court enters a judgment awarding reasonable attorneys' fees under IDEA," and that "[p]laintiffs are entitled to post-judgment interest calculated at the statutory rate on each award under 28 U.S.C. § 1961(a)." *See* Aug. 18, 2015 Mem. Op. at 14–15. In support of their argument, the District only cites to an 1872 Supreme Court opinion stating that "[a]s a general rule it may safely be laid down that wherever the law prohibits payment of the principal, interest during the existence of the prohibition is not demandable." *Brown v. Hiatts*, 82 U.S. 177, 185 (1872). This case concerned contracts during the Civil War, where "[a]s the enforcement of contracts between enemies made before the war is suspended during the war, the running of interest thereon during such suspension

ceases." *Id.* Payment of the principal in these cases was never suspended. *Brown* is unpersuasive authority. Therefore, the Court finds that Judge Harvey correctly calculated interest based on the full judgment amounts and that the District waived its objections thereto.

Having concluded that interest should be calculated based on the amounts of the full judgments, the Court again reiterates its concurrence with Judge Harvey's treatment of undated payments with respect to interest due. Again, plaintiffs argue that they received no post-judgment payments and that Judge Harvey erred by calculating interest based on the original principal and then subtracting out post-judgment payment amounts. As explained above, this Court agrees that plaintiffs failed to overcome the District's evidence of payments made and that Judge Harvey's approach is the most equitable given the fact that the District's payments were undated.

Plaintiffs next dispute the interest rates used by Judge Harvey in calculating interest in *Abraham*, *AC (Clark)*, *Adams*, and *Wingfield*. Under 28 U.S.C. § 1961 "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." 28 U.S.C. § 1961(a). It "shall be computed daily to the date of payment . . . and shall be compounded annually." *Id.* § 1961(b).

Judge Harvey used the following rates: 3.30% in *Abraham*; 0.37% in *AC (Clark)*; 2.89% in *Adams*; and 2.06% in *Wingfield*. Plaintiffs argue that he should have used the following rates: 3.39% in *Abraham*; 0.32% in *AC (Clark)*; 2.95% in *Adams*; and 4.00% in *Wingfield*. This Court has examined the rates published by the Board of Governors of the Federal Reserve System (historic rates available at https://www.federalreserve.gov/datadownload/Choose.aspx?rel=H15) and concurs in part with the rates used by Judge Harvey. As stated by the statute, the proper rate to be used is the rate "for the calendar week preceding the date of the judgment." *Id.* § 1961(a).

It appears that in *Abraham* and *Adams*, plaintiffs are advocating for the use of the rates for the week *of* the judgments. In *Abraham*, the rate for the week of the judgment entered on June 17, 2005 was 3.39%, but the rate for the week preceding June 17, 2005 was 3.30%. In *Adams*, the rate for the week of the judgment entered on February 1, 2005 was 2.95%, but the rate for the week preceding February 1, 2005 was 2.89%. Thus, Judge Harvey used the correct rates in *Abraham* and *Adams* and this Court overrules plaintiffs' objections regarding interest rates in these cases.

With respect to *Wingfield* and *AC (Clark)*, however, the Court agrees that plaintiffs' proffered rates are correct. In *AC (Clark)*, the proper interest rate is 0.32%, which was the interest rate for the week preceding the date of the judgment on December 15, 2009, not the 0.37% rate used by Judge Harvey. And in *Wingfield*, the proper interest rate is 4.00%, which was the interest rate for week preceding the date of the judgment on April 12, 2001, not the 2.06% rate used by Judge Harvey.

Finally, the parties disagree regarding whether interest has stopped accruing and if so, the date at which it stopped. The District argues that it has paid in full except in the *Adams* case, and that interest has therefore stopped accruing on the judgments in the other cases. It argues specifically that interest stopped accruing on November 9, 2016, the date on which the $427,103.76 payment was submitted for processing. Plaintiffs argue that because of the aforementioned objections, the District has not paid in full what it actually owes and therefore that interest continues to accrue. The Court concludes that interest in *Abraham*, *AC (Clark)*, *Adams*, *Allen*, *Isaac*, *Jones*, *McDowell*, *Thomas*, and *Wingfield* stopped accruing on November 9, 2016. When the District notified plaintiffs' counsel in November of 2016 that it was processing the $427,103.76 payment, plaintiffs' counsel requested that the payment be made after January 1, 2017 for income tax purposes. The District obliged. It would inequitable to now essentially penalize

the District for acquiescing to plaintiffs' counsel's wishes.  With respect to *Adams*, however, the District has made no payments, so interest has continued to accrue.  Finally, with respect to *Bradley*, this Court has found that plaintiffs are due an additional $20,000 not paid.  Giving the District time to process and make payments to plaintiffs, the Court concludes that interest shall stop accruing in *Adams* and *Bradley* on July 15, 2017, thirty days from entry of this Opinion.

The Court summarizes its findings regarding interest in the following chart:

| Case | Date of Judgment | Date of Accrual | Remaining Balance Due on Judgment | Interest Rate | Interest Due | Post-Judgment Payments | Total Due (After Post-Judgment Payments) | Interest Paid (To Date) | Remaining Due |
|---|---|---|---|---|---|---|---|---|---|
| *Abraham v. DC*, 01-27 | 6/17/2005 | 11/9/2016 | $2,002,077.25 | 3.30% | $897,280.18 | $0 | $897,280.18 | $94,124.28 | $803,155.90 |
| *AC (Clark) v. DC*, 06-439 | 12/15/2009 | 11/9/2016 | $206,356.19 | 0.32% | $4,604.20 | $0 | $4,604.20 | $640.60 | $3,963.60 |
| *Adams v. DC*, 03-2139 | 2/1/2005 | 7/15/2017 | $1,134,699 | 2.89% | $483,454.91 | $0 | $483,454.91 | $0 | $483,454.91 |
| | 7/28/2005 | 7/15/2017 | | 3.68% | $0.00 | $0.00 | $0.00 | $0 | $0 |
| *Allen v. DC*, 00-591 | 6/4/2001 | 11/9/2016 | $40,635.50 | 3.70% | $30,582.56 | $11,973.50 | $18,609.06 | $0 | $18,609.06 |
| *Bradley v. DC*, 99-3188 | 10/9/2001 | 7/15/2017 | $53,524.75 | 2.40% | $24,286.07 | $0 | $24,286.07 | $1,486.97 | $22,799.10 |
| *Isaac v. DC*, 00-122 | 8/31/2001 | 11/9/2016 | $43,854.00 | 3.45% | $29,589.45 | $13,596.50 | $15,992.95 | $1,412.20 | $14,580.75 |
| *Jones v. DC*, 00-593 | 6/4/2001 | 11/9/2016 | $70,265.75 | 3.70% | $52,882.49 | $16,568 | $36,314.49 | $0 | $36,314.49 |
| *McDowell v. DC*, 00-594 | 6/4/2001 | 11/9/2016 | $54,269.50 | 3.70% | $40,843.60 | $2,540 | $38,303.60 | $7,882.48 | $30,421.12 |
| *Thomas v. DC*, 03-1791 | 3/22/2007 | 11/9/2016 | $28,258.00 | 4.93% | $16,688.35 | $10,708 | $5,980.35 | $6,513.54 | ($533.19) |
| *Wingfield v. DC*, 00-121 | 4/12/2001 | 11/9/2016 | $37,291.25 | 4.00% | $31,437.80 | $0 | $31,437.80 | $1,363.22 | $30,074.58 |

As the above chart shows, the District still owes significant sums of interest in each case except *Thomas*.  Although the interest calculated as due as of October 1, 2015 in *Thomas* by Judge Harvey totaled $3,644.43, the District has reported that it has since paid a total of $6,513.54.  Even after including the interest accrued from October 1, 2015 until November 9, 2016, this sum equals $5,980.35.  Thus, the District has overpaid by $533.19.  In an effort to preserve appropriate records in each case, this Court will order plaintiffs to return the $533.19 rather than deduct that amount from another case where full payments have not yet been made.

## V.    CONCLUSION

For the foregoing reasons, this Court will accept and adopt in part, modify in part, and reject in part Judge Harvey's Report and Recommendation.  Specifically, the Court will accept and adopt Judge Harvey's analyses and conclusions regarding evidence of payments and payments made in *Adams v. DC*.  The Court will reject Judge Harvey's finding of waiver in *Bradley*.  The Court will accept and adopt Judge Harvey's findings with respect to interest calculations, his treatment of undated post-judgment payments, and the interest rates used in each case except *Wingfield* and *AC (Clark)*.  The Court will modify the interest rates used in *Wingfield* and *AC (Clark)*.  Finally, the Court finds that interest shall stop accruing in *Adams* and *Bradley* on July 15, 2017, but that interest stopped accruing in every other case on November 9, 2016, because that is the date on which the $427,103.76 payment was submitted for processing, even though it was delayed at plaintiffs' counsel's request until January 2017.

According to the above analysis, and taking into consideration the District's payment of $427,103.76, the Court concludes that the following amounts are still due in each case:

| Case | Remaining Fees Due | Remaining Costs Due | Remaining Interest Due |
|---|---|---|---|
| *Abraham v. DC*, 01-27 | $0 | $0 | $803,155.90 |
| *AC (Clark) v. DC*, 06-439 | $0 | $0 | $3,963.60 |
| *Adams v. DC*, 03-2139 | $199,913 | $779 | $483,454.91 |
| *Allen v. DC*, 00-591 | $0 | $0 | $18,609.06 |
| *Bradley v. DC*, 99-3188 | $20,000 | $0 | $22,799.10 |
| *Isaac v. DC*, 00-122 | $0 | $0 | $14,580.75 |
| *Jones v. DC*, 00-593 | $0 | $0 | $36,314.49 |
| *McDowell v. DC*, 00-594 | $0 | $0 | $30,421.12 |
| *Thomas v. DC*, 03-1791 | $0 | $0 | -$533.19 |
| *Wingfield v. DC*, 00-121 | $0 | $0 | $30,074.58 |
| **Total** | $219,913 | $779 | $1,442,840.32 |

Separate orders shall issue in each individual case.

Date: June 15, 2017

Royce C. Lamberth
United States District Judge