# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEITH ALLEN et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, )<br>)<br>Defendant. )<br>) | Civil Case No. 00-591 |

## MEMORANDUM OPINION

In March 2000, Keith Allen sued the District of Columbia for violating the Individuals with Disabilities Education Act, 20 U.S.C. § 1400–1487. In 2001, the Court granted his motions for summary judgment and for attorneys fees. Since then, both sides—now joined by plaintiffs in ten other consolidated cases—have impelled an eighteen-year skirmish over the fee amount and payment. Today, they duel themselves to a draw.

Pending before the Court are (hopefully) the final four motions in the case: plaintiffs' motion [118] for fees-on-fees; plaintiffs' motion [121] to alter the Court's June 2017 order directing D.C. to pay $18,609.06 in post-judgment interest; D.C.'s motion [122] to alter the same order; and plaintiff's motion [141] to compel compliance with the Court's August 2015 order directing D.C. to pay plaintiffs $4000 for each action in the consolidated cases.[1] The Court takes up each in turn.

**I.** First, the Court grants plaintiffs' motion for fees-on-fees and orders D.C. to pay fees and costs of $324,277.78.

---

[1] Also pending are D.C.'s motions for an extension of time to respond to plaintiff's fees-on-fees motion [135], and for leave to file a sur-reply to that motion [138].

In their initial motion, which incorporates previous filings in two of the consolidated cases, plaintiffs sought fees for the 904.81 hours their counsel spent litigating their prevailing fee claims (519 for lead counsel and 385.81 for his associate), paid according to the USAO matrix, as well as $1559.50 in costs.

D.C. responded with detailed objections to 55.8 hours by lead counsel, 205.4 hours by his associate (objecting mainly to what it considered vague or inadequately documented entries), and $1054.80 in PACER costs (classifying them as unrecoverable "administrative overhead" and the result of plaintiff's failure to maintain diligent records). D.C. also argued that because plaintiffs did not present specific evidence justifying payment at the full USAO rates, the Court should award only 75% of the rates, and that the associate counsel should be compensated as a paralegal for work done prior to his admission to the D.C. Bar.

In their reply, plaintiffs yielded to all but 11.1 hours of D.C.'s objections to their lead counsel's hours[2] and to 136.73 hours of D.C.'s objections to their associate counsel's hours. Plaintiffs appended new billing records with increased detail for the associate's remaining hours. Plaintiffs also accepted D.C.'s request to compensate the associate as a paralegal for work done before his admission to the D.C. Bar. As for the costs, plaintiffs fixed an arithmetic error raising their total claim to $1625 and argued that the $1054.80 in PACER costs were appropriate, although they indicated a willingness to concede those charges if necessary to facilitate a prompt award.

---

[2] After capitulating to 44.7 hours of D.C.'s objections, refusing to submit to the remaining 11.1 hours is puzzling since D.C.'s initial response made quite clear that it objected to 55.8 of plaintiffs' lead counsel's claimed 519 hours. In an email sent after D.C. filed its response but before plaintiffs replied, plaintiffs' lead counsel asked D.C. to clarify whether the 55.8-hour figure double-counted 11.1 hours of objections made to timesheets submitted in earlier proceedings. After D.C. responded by saying their position was "laid out in [their] papers," plaintiffs deemed D.C.'s objection to those 11.1 hours waived, and thus ceded only 44.7 hours. Setting aside the mistaken waiver argument, the Court finds it obvious D.C.'s 55.8 figure represented the final and complete sum of their objections.

D.C. sought leave to file a sur-reply, even though their only new argument was a broadside challenge to the associate's new timesheets as improperly reconstructed; D.C. did not object to any timesheet entry.

So after all the briefing, the dispute before the Court has narrowed to:

- for plaintiffs' lead counsel, either 474.3 hours (according to plaintiffs) or 463.2 hours (according to D.C.) at $602 hourly[3];

- for plaintiffs' associate counsel, 248.58[4] total hours: 225 at $164 hourly,[5] 11 at $334,[6] and 12.58 at $346[7]; and

- for costs, either $1559.50 (plaintiff's original, mistaken request); $1625 (plaintiff's subsequent, corrected request); or $504.70 (plaintiff's original request less PACER costs).

Today, the Court awards plaintiffs $324,277.78 in fees and costs:

- $278,846.40 comes from their lead counsel's 463.2 hours of work at $602 hourly.[8]

- $44,926.68 comes from their associate counsel's 248.58 hours of work at the rates corresponding to his experience as the case progressed.[9]

- $504.70 reimburses costs, starting with plaintiffs' original request (their counsel should have checked his math before filing the original motion) and subtracting $1054.80 in PACER

---

[3] Plaintiffs' lead counsel was admitted to the D.C. Bar in 1981. *See* Pls.' Reply Br. 1 n.2, ECF No. 137. Thus during the period at issue (June 2015–June 2017), he had over thirty-three years experience, resulting in $602 hourly under the USAO Matrix's 2017–2018 rates. *See* U.S. Dep't of Justice, USAO Attorney's Fees Matrix—2015–2019 [hereinafter USAO Matrix], https://www.justice.gov/usao-dc/file/796471/download (last visited Oct. 1, 2018).

[4] The Court draws this figure and the coextensive breakdown from page 10 of plaintiffs' reply brief [137], even though the timesheets submitted as an exhibit [137-1] total 249.08 hours.

[5] The Matrix's 2017–2018 paralegal rate. *See* USAO Matrix, *supra* note 3. Plaintiffs' associate counsel was not admitted to the D.C. Bar until October 17, 2016. *See* Pls.' Reply Br. 1 n.2.

[6] The Matrix's 2017–2018 rate for attorneys with 2-3 years experience. *See* USAO Matrix, *supra* note 3. By the time plaintiffs' associate counsel was admitted to the D.C. Bar, he had already practiced law for over two years, having been admitted to the New York bar in March 2014. *See* Pls.' Reply Br. 1 n.2.

[7] The Matrix's 2017–2018 rate for attorneys with 4-5 years experience. *See* USAO Matrix, *supra* note 3; *see also supra* note 7.

[8] *See supra* note 2 and accompanying text.

[9] *See supra* notes 5–7 and accompanying text.

costs, which plaintiffs could have avoided—or at least substantially reduced—with more diligent recordkeeping.

The Court declines D.C.'s request to pay plaintiffs' counsel at 75% of the USAO Matrix rates: earlier in this litigation, the Court awarded plaintiffs' counsel fees under the full *Laffey* Matrix rates (the USAO Matrix's predecessor), *see, e.g.*, 6/4/01 Op. at 8-10, ECF No. 29, and in other cases this Court has noted the Matrix provides "the benchmark for reasonable fees in this Court." *E.g.*, *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (internal quotation marks omitted) (quoting *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006)), *amended & vacated in part on other grounds*, *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 786 F. Supp. 2d 110 (D.D.C. 2011).

**II.** Second, the Court denies plaintiff's motion to alter this Court's June 2017 order directing D.C. to pay $18,609.06 in post-judgment interest on attorneys fees. To arrive at that figure, the Court—with considerable help by Judge Harvey—started with the total judgment amount (not the amount available under the fee caps), subtracted pre-judgment payments by D.C., used the difference to calculate the total post-judgment interest, and then subtracted any post-judgment payments to determine the amount outstanding. For years—and throughout the entire briefing on their motion—plaintiffs disputed whether certain post-judgment payments by D.C. happened at all. But a week after filing their reply, plaintiffs reversed course. Armed with thirteen check stubs recently unearthed from storage, plaintiffs now acknowledge the payments happened, but ask the Court to accept the "newly discovered evidence" showing the payments were pre-judgment. Therefore, the amount subtracted out as a post-judgment payment should really have been subtracted from the full judgment amount before calculating the total interest.

Changing the calculations in this way yields an additional $14,025.97 in interest for plaintiffs' counsel.

But for all that, plaintiffs never explain why they waited so long to check their records in storage. Plaintiffs produced these check stubs two years after Judge Harvey ordered them to produce "all data relied on to determine the amount that has already been paid." 8/28/15 Order at 2. Since that order, Judge Harvey and his staff spent untold hours poring over the records produced by plaintiffs. Judge Harvey released his report, both parties filed objections, this Court issued its order, and both parties fully briefed separate motions to alter. Only now do plaintiffs spring these check stubs on D.C. and on the Court, even though they have been in plaintiffs' possession all along. This Court declines to reward their counsel's lack of diligence. The Court will not reopen the final calculation based on what plaintiffs' counsel calls "newly discovered" evidence that was in their possession and control and simply was not timely produced.

**III.** Third, the Court denies D.C.'s motion to alter that same order. Feigning ignorance of plaintiffs' recurring request—and the Court's long-recognized plan—to calculate post-judgment interest on the full judgment amounts, D.C. asks the Court to reduce D.C.'s post-judgment obligation to only the interest on the amounts due under the fee caps. In doing so, D.C. rehashes an argument it made responding to the Court's second request for clarification on its position regarding the amounts still due. But by then—and now—D.C. waived the argument. D.C. neglected to raise it during the thirteen-month interest litigation before Judge Harvey, and failed to raise it in this Court as a timely objection to Judge Harvey's report—which, to anyone willing to break down the math, made plain the interest was calculated on the full judgment amounts. D.C.'s motion fails.

**IV.** Finally, the Court denies plaintiffs' motion to compel. The motion tests whether plaintiffs' counsel can recover fees per claim or per proceeding. Since claims resulted in both an administrative and a judicial proceeding, plaintiffs' counsel argues they are entitled to fees up to the $4000 cap in both proceedings, for $8000 total per claim. Advancing a cribbed understanding of *Kaseman v. District of Columbia*, 444 F.3d 637 (D.C. Cir. 2006), which answered this question in the negative for claims under the 2005 caps, plaintiffs' counsel contends this case—under the 2009 caps—presents a novel issue. *But see id.* at 643 ("We therefore hold the term 'action' in the fee cap provision . . . encompasses both administrative proceedings and subsequent fee requests brought in the district court by prevailing parties."). Plaintiffs' argument misses the mark. *Kaseman* controls this case; its arguments apply with equal force to the 2009 caps. *E.g., id.* at 642 (noting that adopting plaintiffs' interpretation "would produce disparate results for parents who prevail at the administrative level relative to parents who must resort to a civil action to prevail on their IDEA claims"). What is more, the Court already rejected this argument years ago, deeming it "clear that the District is not required to pay up to the fee cap a second time where administrative actions are subsequently brought to federal court." 8/8/15 Op. at 11; *see also* 6/6/17 Op. at 3. Nothing has changed; plaintiffs' motion is denied.

\* \* \*

To review: The Court grants plaintiffs' motion [118] for fees-on-fees and orders D.C. to pay plaintiffs $324,277.78. The Court also denies plaintiffs' motion [121] to alter, denies defendant's motion [122] to alter, and denies plaintiffs' motion [141] to compel. A separate order will issue on this date.

Date: October 5, 2018

_____
Royce C. Lamberth
United States District Judge

6